following statement in respect to the burden of proof concerning the alterations in the instrument:

"The defendant has produced a paper which, on the face of it, is a defense to this suit; and the duty of explaining it by showing that it is something else rests with the plaintiff in this suit. The plaintiff assumes the burden of showing that that note is other than what it purports to be, or than what the defendant says it is."

The note in question has been produced upon the argument of the present appeal for our inspection, and it certainly bears marks indicating that it may have been altered from the form in which it was first written. The body of the paper—all but the signature—is in the handwriting of the defendant, who has had possession of it always, and who would benefit by the changes which are alleged to have been made in the date and amount. Under such circumstances, I understand the rule in this state to be that the burden of explaining the apparent alterations in the instrument is upon the party producing the paper. Tillou v. Insurance Co., 7 Barb. 565; O'Donnell v. Harmon, 3 Daly, 424. In the case at bar, the proper instruction to the jury would have been that if, from the appearance of the paper, they believed it had been altered as alleged, then the burden was upon the defendant of showing that the alteration had been made before the note was signed. No exception, however, was taken to the portion of the charge which I have quoted, nor did the counsel for the appellant make any request for a different instruction on the subject, which would have called the attention of the trial judge directly and distinctly to the point, and doubtless have led to a correction of the charge in that respect. But, even in the absence of an exception, I think we ought to grant a new trial under the unusual circumstances presented here, where the rule laid down by the court as to the burden of proof may well have had a controlling influence upon the verdict.

The judgment should be reversed, and a new trial granted. All concur.

(3 App. Div. 344.)

BIRD v. NEW JERSEY & N. Y. R. CO.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. MORTGAGES—RECORDING—REFERENCE TO OTHER INSTRUMENTS—NOTICE.
    The recording of a mortgage of railroad property, described generally "as the same is located by survey duly filed in the office of the clerk of the county of R.," gave no notice, at the time, of possession of specific property, if, in fact, the survey was not filed till six months thereafter.
2. ADVERSE POSSESSION—WHAT CONSTITUTES.
    Where it appears that defendant entered on the property either under an agreement to purchase for a specified sum, or under a simple license to occupy till some terms should be arranged between the parties, the subsequent possession cannot be deemed adverse.
3. EJECTMENT—EXTENT OF RECOVERY.
    Where, in ejectment, the trial court, at the instance of defendant, finds that it had been in actual possession "of the strip of land described in the complaint," but renders judgment for plaintiff for the same property, because defendant's possession was not adverse, defendant cannot complain that the recovery was for a strip 66 feet wide, while the evidence showed that it had occupied a strip but 8 feet wide.

Action by Washington H. Bird against the New Jersey & New York Railroad Company in ejectment. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Robert Thorne, for appellant.
George R. Bristor, for respondent.

BARTLETT, J. By the judgment in this action, the plaintiff has established his right to the possession of a strip of land near Union Station, in the county of Rockland, occupied for railroad purposes by the defendant. The sufficiency of the proof of the plaintiff's title is not questioned, except so far as the defendant claims that it is defeated by the evidence of adverse possession. In order to make out the defense of adverse possession, it was necessary to show that the railroad company had been in open, continued, and actual occupation of the premises in controversy for more than 20 years before the commencement of the action; and, furthermore, that such possession had been under a claim of title hostile to that of the plaintiff. The court found that the defendant and its legal predecessor had been in open, continuous, notorious, and actual possession of the strip of land described in the complaint for more than 20 years, but held, in substance, that such possession was subordinate, instead of adverse, to the plaintiff's title. A mortgage of the railroad property generally was made by the defendant's predecessor in title on November 1, and recorded on December 30, 1870. The railroad company had not then taken possession of the land in controversy. The mortgage referred to the mortgaged railroad property "as the same is located by survey duly filed in the office of the clerk of the county of Rockland." As matter of fact, no such survey had then been filed. In June of the following year, however, the railroad company filed in the office of the county clerk a profile and location of its right of way, showing that the railway line was located upon the identical lands described in the complaint.

Upon these facts, it is contended, in behalf of the appellant, that the mortgage constituted a claim of title to the lands in suit adverse to that of the plaintiff or his predecessors, and of which they must be deemed to have had notice, by reason of the record of the instrument. I do not think this position is tenable. No one inspecting the mortgage at the time when it was recorded would find anything in it to indicate that it could, by any possibility, refer to the premises which are the subject of this suit. It spoke of a survey as having been already duly filed in the office of the county clerk. If the searcher had looked for that survey, he would have looked for it in vain. For the purposes of notice, I do not see on what principle it can be held that the profile, which was filed with the county clerk six months later, referred back to that instrument, so as to constitute a part of it. A document the record of which is to give notice at the time of a particular state of facts must contain, either in itself or by reference to other sources of information, some indica-

tion of the facts of which notice is to be given.     So far as this mort-
gage referred to the survey, it referred to something which did not ex-
ist at the time of its record, or come into existence until long after-
wards.     The mortgage also purported to convey to the mortgagees
the railroad as the same was being constructed, including the road-
way, lands, bridges, rails, embankments, and other superstructures
built or being built at the time it was executed.     It might be said
that this provision was broad enough to cover the premises to which
this suit relates, if the railroad company had then entered upon those
premises; but the proof shows that no entry was made upon the
land in question until 1871, and probably not until 1872.

But even if a claim of title adverse to that of the record owners
could be spelled out of this railroad mortgage and profile, and the
filing of the same, the proof in this case shows very clearly that the
railroad company abandoned any such claim when, in the process of
construction, the premises in controversy were reached.     The civil
engineer and surveyor who represented the corporation in acquir-
ing its rights of way, and in negotiating with landowners for that
purpose, had a conference with the agent of the lady who then owned
this property.     He promised to pay her $500 for the use of the
ground if the railroad company was allowed to occupy it; and it is
apparent that it was on the strength of this promise, and only in
consequence thereof, that the construction of the line was permitted
over the land in question.     The testimony of the witness who rep-
resented the owner in the negotiations is not substantially contra-
dicted by the civil engineer who acted in behalf of the railroad com-
pany.     He himself stated that his business was to go around and
buy land, and that he offered to buy this property if the owners
would give him a deed.     He could not recollect offering or agreeing
to pay anybody a specific sum for this land, but would not swear that
he had not done so.     There is other testimony which sustains the
statement made by the learned trial judge, in the course of his opin-
ion, that, "instead of claiming title, the defendant and its predeces-
sors have all along been promising to pay the amount agreed to be
paid when let into possession under the license."     Upon the entire
evidence as to the circumstances under which the railroad company
entered upon the property, it is quite clear that there was either
an agreement to purchase for a specified sum, or a simple license to
occupy until some terms should be arranged between the parties.     In
neither case could the occupation be deemed adverse.     Where an in-
tending purchaser enters upon land which is the subject of the con-
tract, his possession is deemed subordinate to the rights of the owner
until the conditions entitling the buyer to a conveyance have been
fully performed.     In re Department of Parks, 73 N. Y. 560, 566.     If
there was a mere license, no adverse possession could arise out of the
railroad's occupancy of the land by permission.     Borden v. Railroad
Co., 5 Hun, 184, affirmed in 67 N. Y. 588.

Only one other point requires notice.     The appellant contends that
the plaintiff has been permitted to recover too much land, inasmuch
as the evidence shows that it actually occupies a strip only 8 feet
wide, whereas the strip described in the complaint is 66 feet in width.

I do not think this objection is available. At the express request of the defendant's counsel, the trial court found that the defendant and its legal predecessor had been for more than 20 years in actual possession "of the strip of land described in the complaint." This is a finding, made at the defendant's own instance, that it was in occupation of the entire parcel which the plaintiff sought to recover. The request was made at the end of the trial, and in the light of all the evidence, and the appellant has no ground for complaint because the court complied with it.

The judgment should be affirmed, with costs. All concur.